EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Departamento de Asuntos del Consumidor | Certiorari |
|---|---|
| Recurrido | |
| v. | 2014 TSPR 119 |
| TRU of Puerto Rico, Inc. h/n/c Toys "R" Us | 191 DPR ____ |
| Peticionario | |

Número del Caso: CC-2011-758

Fecha: 9 de octubre de 2014

Tribunal de Apelaciones:

      Región Judicial de San Juan, Panel III

Abogados de la Parte Peticionaria:

      Lcda. Dora Peñagarícano
      Lcdo. Edwin León Pérez

Abogado de la Parte Recurrida:

      Lcdo. José Morales Bauzá

Materia:   Sentencia con Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Asuntos
Del Consumidor

     Recurrido

       v.               CC-2011-758

TRU of Puerto Rico, Inc.
h/n/c Toys "R" Us

     Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 9 de octubre de 2014.

Comparece Toys "R" Us (TRU) y solicita que se revoque la sentencia del Tribunal de Apelaciones que confirmó una Resolución emitida por el Departamento de Asuntos del Consumidor (DACo). En esencia, debemos determinar si proceden las multas que DACo impuso a TRU por alegadamente quebrantar la reglamentación sobre anuncios engañosos. Luego de analizar el asunto, concluimos que DACo erró arbitrariamente al imponer las multas que nos ocupan, porque no están cimentadas por evidencia sustancial que obre en el expediente administrativo. OCS v. Universal, 187 DPR 164, 179

(2012).

                               I

    Ante la promulgación del Reglamento contra prácticas y anuncios engañosos, Reg. Núm. 7751 de 24 de septiembre de 2009, un representante de TRU participó de una reunión con el Secretario del DACo.[1] En esa reunión se discutió la Regla 13 del Reglamento Núm. 7751, íd. El representante de TRU planteó la dificultad de establecer las cantidades de artículos disponibles en una venta especial, ya que el inventario de sus cuatro tiendas era variado. La recomendación del Secretario del DACo en esa reunión fue que se estableciera "la cantidad más baja de la tienda que tuviera". Apéndice, pág. 21. El representante de TRU entendió que para satisfacer los requerimientos del Reglamento, el anuncio debía incluir la cantidad mínima como cantidad disponible de los artículos en venta especial. El 3 de noviembre de 2009, DACo emitió la "Interpretación del Secretario 2009-02" en la que aclaró la aplicación del Reglamento Núm. 7751, supra. En esa interpretación no se aclaró expresamente lo que se discutió en la reunión que tuvieron TRU y DACo.

    Varios días después, TRU promocionó una venta especial del 15 al 21 de noviembre de 2009. Específicamente, el 16 y 18 de noviembre de 2009, un funcionario de DACo realizó desde su despacho una investigación sobre esa venta especial. La investigación, que consistió exclusivamente en examinar los anuncios publicados, llevó al investigador a concluir que se

---

[1] El Reglamento Núm. 7751, supra, fue derogado por el Reglamento contra prácticas y anuncios engañosos, Reg. Núm. 7932 de 15 de octubre de 2010.

violó la Regla 13(A)(1) del Reglamento Núm. 7751, supra. Las violaciones consistieron en la publicación de 48 anuncios en los que se identificó la cantidad mínima disponible de los artículos en venta especial. El inspector entendió que eso no cumplía con lo dispuesto en el Reglamento Núm. 7751, supra, que exige anunciar la cantidad disponible del artículo en venta especial por tienda. De este modo, se le notificó una multa de $400 por cada una de las 48 violaciones.

Lo anterior se repitió para las ventas especiales del 6 al 12 de diciembre y del 13 al 19 de diciembre de 2009. En todas ellas se le imputó a TRU infringir la Regla 13(A)(1) del Reglamento Núm. 7751, supra, por utilizar la frase "mínimo por tienda" para establecer la cantidad disponible de artículos. Por las ventas del 6 al 12 de diciembre de 2009, se le notificaron 21 infracciones con una multa de $400 por cada una y, en las ventas del 13 al 19 de diciembre de 2009, se le notificaron 24 infracciones y una multa de $400 por cada una.

Una vez el caso estaba ante la consideración de DACo, TRU solicitó la desestimación de las infracciones. Arguyó que DACo no podía ir en contra de sus propias acciones, dado que su Secretario les sugirió hacer referencia al mínimo de los artículos disponibles. Añadió que la imposición de las multas no cumplió con lo dispuesto en el Reglamento para la imposición de multas, Reglamento Núm. 7750 de 24 de septiembre de 2009, y que no cometió las infracciones alegadas.

Tras la celebración de una vista administrativa y aquilatar la prueba allí presentada, DACo concluyó que las infracciones fueron cometidas y ordenó el pago de $37,600 por todas las multas impuestas. La agencia no acogió las defensas esgrimidas por TRU. Puntualizó que las directrices del Reglamento contra prácticas y anuncios engañosos, supra, eran claras al establecer que se debía incluir la cantidad de artículos disponible por tienda. A modo de conclusión, estableció que TRU no siguió la recomendación de anunciar el inventario disponible en una de sus cuatro tiendas, sino que utilizó la frase "mínimo por tienda", independientemente de las cantidades disponibles.

Además, DACo determinó que era inaplicable el Reglamento para la imposición de multas, supra, ya que alegadamente ese se utilizaba solo en los casos donde el funcionario de la agencia visita una tienda en particular.

Inconforme, TRU presentó un recurso de revisión administrativa en el que repitió sus defensas anteriores. En síntesis, argumentó que no se violó el Reglamento contra prácticas y anuncios engañosos, supra, y que no procedían las multas impuestas. Además, adujo que si no se cumplió debidamente con el señalamiento de la cantidad de artículos disponibles lo que procedía conforme a la Regla 14 del Reglamento contra prácticas y anuncios engañosos, supra, era que se tuviera como no puesto y que la tienda ofreciera "rainchecks" a sus clientes en el caso de que la mercancía se agotara. Además, expresó que los Avisos de Infracción no

cumplieron con las disposiciones del "Reglamento para la Imposición de Multas", ya que omitieron cierta información como: (i) la dirección física de la tienda intervenida; (ii) el lugar y hora en que los avisos se emitieron; (iii) las personas que recibieron las infracciones; (iv) una advertencia de que DACo podía, dentro del término de veinte días, notificar formalmente una multa administrativa y; (v) las firmas de los representantes de TRU que recibieron los avisos. TRU precisó que se le violó su debido proceso de ley al remitírsele los avisos de infracción junto con las notificaciones de las multas. Además, indicó que DACo abusó de su discreción al emitir multas múltiples por una sola violación, ya que el Reglamento Núm. 7751, supra, no lo permitía. Por su parte, DACo presentó su alegato en oposición.

Al evaluar los escritos de las partes, el Tribunal de Apelaciones concluyó que TRU violó la Regla 13(A)(1) del Reglamento Núm. 7751, supra. Ese foro expresó que permitir la utilización de la palabra "mínimo" derrotaría el propósito de proveerle seguridad al consumidor sobre la cantidad disponible del artículo. Asimismo, rechazó las defensas de TRU, a saber, la doctrina de los actos propios y la violación al reglamento de multas. Determinó que la notificación de las multas fue adecuada y, a tales efectos, puntualizó que TRU tuvo conocimiento de la conducta imputada y que tuvo oportunidad de defenderse.

En desacuerdo, el 15 de septiembre de 2011, el peticionario presentó la petición de certiorari que nos ocupa. En ella repitió los mismos argumentos aducidos ante el Tribunal de Apelaciones.

El 16 de diciembre de 2011 emitimos el auto de certiorari. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver la controversia ante nuestra consideración.

II

Nuestro derecho administrativo se cimenta en la norma que establece que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. The Sembler Co. v. Mun. de Carolina, 185 DPR 800, 821 (2012); Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002 (2011); Vélez v. A.R.Pe., 167 DPR 684, 693 (2006). Los procesos administrativos y las determinaciones de hechos de las agencias están cobijadas por una presunción de regularidad y corrección. Íd.; Henríquez v. Consejo de Educación Superior, 120 DPR 194, 210 (1987). La revisión judicial se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable. O.E.G. v. Rodríguez, 159 DPR 98, 119 (2003).

Las determinaciones de hechos de una agencia administrativa deben sostenerse por los tribunales si están respaldadas por evidencia suficiente que surja del expediente administrativo considerado en su totalidad. The Sembler Co. v. Mun. de Carolina, supra, págs. 821-822; Pacheco v.

Estancias, 160 DPR 409, 432 (2003). No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 2175. Ahora bien, los tribunales no deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. Torres Santiago v. Depto. Justicia, supra, págs. 1002-1003. Por el contrario, deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que administran. Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

La deferencia que se reconoce a las decisiones de las agencias administrativas cederá **cuando no se fundamente en evidencia sustancial**, cuando la agencia se equivoque en la aplicación de una ley o cuando la actuación sea arbitraria, irrazonable o ilegal. OCS v. Universal, supra, pág. 179.

III

Al examinar con detenimiento el expediente de este caso y las disposiciones reglamentarias aplicables, es ineludible concluir que las multas impuestas deben ser revocadas ya que no hay evidencia sustancial en el expediente que las justifique. OCS v. Universal, supra, pág. 179.

La disposición reglamentaria alegadamente infringida por TRU, conforme a la decisión del Tribunal de Apelaciones, fue la Regla 13(A) del Reglamento contra Prácticas y Anuncios Engañosos, Reglamento Núm. 7751, supra. Específicamente, esa regla dispone:

> El comerciante tendrá disponible para la venta, en la tienda o en el almacén, los bienes anunciados en especial, en cantidades suficientes para responder a la demanda razonablemente anticipada durante todo el período de efectividad de la venta especial anunciada, a menos que se cumpla con los siguientes requisitos:
>
> 1. el anuncio del bien en especial indica clara y adecuadamente la cantidad disponible de cada uno de los bienes en especial por tienda;
>
> 2. que la venta especial finalizará en una fecha determinada; y
>
> 3. hasta que se vendan los artículos disponibles.

Por su parte, la Regla 14 del Reglamento contra Prácticas y Anuncios Engañosos, <u>supra</u>, establece en lo pertinente:

REGLA 14 — ARTÍCULOS SUSTITUTOS Y VALES ("RAIN CHECKS")

A. Cuando no se encuentre disponible para la venta el bien anunciado en especial, el comerciante vendrá obligado a ofrecer al consumidor un artículo sustituto por el precio del bien anunciado en especial.

B. En ausencia de un artículo sustituto el comerciante tendrá que pagar el valor representativo del descuento de una sola unidad en efectivo al consumidor.

C. Si el consumidor prefiere la compra del bien anunciado en especial, el comerciante deberá ofrecerle un vale ("rain check"), cumpliendo el comerciante con los siguientes requisitos:

1. conseguirle al consumidor el bien en especial dentro de los siguientes treinta (30) días calendarios;

2. dentro de los treinta (30) días notificarle al consumidor, por teléfono, por correo ordinario, o por correo electrónico, que el bien está disponible para ser recogido;

3. conservar el bien a disposición del consumidor por quince (15) días calendarios contados a partir de la notificación al consumidor; y

4. transcurrido el término de treinta (30) días, el consumidor podrá optar entre un artículo sustituto, el valor en efectivo del descuento anunciado del artículo en especial, o extender el vale por un término adicional de treinta (30) días. En el caso de optar por el artículo sustituto el precio será igual al del artículo anunciado en especial.

Basándose en la Regla 13, DACo multó a TRU porque en varios anuncios sobre ventas especiales no especificó la cantidad disponible de cada uno de los bienes en especial por tienda. En esos anuncios, TRU expuso la cantidad mínima de artículos disponibles, pero no así la cantidad exacta. El DACo interpretó que esa acción violaba de forma automática la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra. Por ello, expidió las 93 multas que nos ocupan.

Al evaluar el contenido de la Regla 13, íd., vemos que su propósito es regular la disponibilidad de los bienes anunciados en una venta especial. Esa regla exige, como norma general, que los comerciantes tengan suficiente mercancía para suplir la demanda durante una venta especial. Por el contrario, si no hay mercancía suficiente y se agota durante una venta especial, los comerciantes vienen obligados a ofrecer los llamados "rainchecks" o artículos sustitutos. Véase, Regla 14 del Reglamento contra prácticas y anuncios engañosos, supra. Ahora bien, la propia Regla 13 reconoce unas circunstancias excepcionales en las que un comerciante no tiene que tener disponible una cantidad de mercancía

razonable para suplir la demanda durante todo el tiempo de vigencia de la venta especial si cumple con indicar: (1) la cantidad de los artículos disponibles; (2) la duración de la venta especial o; (3) que la venta es hasta que se agoten los artículos disponibles. Cónsono con ello, el Secretario del DACo en su Interpretación 2009-02 explicó que "si no se indican los artículos disponibles, los artículos anunciados en especial deben estar disponibles durante la efectividad de la venta especial". Apéndice, pág. 704.

Resolvemos que DACo erró al multar a TRU porque no indicó clara y adecuadamente la cantidad de artículos disponibles en sus ventas especiales. TRU no tenía la obligación de incluir esa información en los anuncios. La obligación de TRU, según la Regla 13, era tener la cantidad suficiente de los artículos anunciados para suplir la demanda. Como excepción, si TRU carecía de la cantidad de mercancía suficiente, tenía a su disposición cumplir con los tres requisitos antes mencionados. A nuestro juicio, DACo debió investigar **primero** si se cumplía con el propósito principal de la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra: que el comerciante tenga la cantidad suficiente de los artículos anunciados. Solo al incumplir con esa disposición se tornaba pertinente analizar si los anuncios publicados indicaban la cantidad disponible de los artículos de venta especial. Antes de eso, el análisis de los anuncios sería prematuro e impertinente, pues el requisito del inciso 1 de la Regla 13 del Reglamento contra

prácticas y anuncios engañosos, supra, cobra vigencia ante el incumplimiento del comerciante de mantener una cantidad suficiente de artículos en especial durante toda la venta.

En este caso no se evaluó el cumplimiento principal que impone la regla. DACo se limitó a evaluar cómodamente desde su despacho los anuncios publicados y no acudió a las tiendas de TRU para verificar si, efectivamente, mantenían una cantidad de mercancía suficiente para satisfacer la demanda de artículos en especial.

En otras palabras, el reglamento le requiere a todo comerciante tener mercancía suficiente para satisfacer "la demanda razonablemente anticipada" del objeto ofrecido en venta especial. Regla 13(A) del Reglamento contra prácticas y anuncios engañosos, supra. Si no la tiene, **no procede multarle** por violar el reglamento, porque este le da otra alternativa: el comerciante puede limitar el alcance de la venta especial indicando clara y adecuadamente la cantidad de artículos por tienda, Regla 13(A)(1), íd., ponerle una fecha límite a la venta, Regla 13(A)(2), íd., o indicar que la venta terminará cuando se agoten los artículos disponibles, Regla 13(A)(3), íd.

Si el comerciante no tenía artículos suficientes para satisfacer la "demanda razonablemente anticipada" ni escogió limitar la venta mediante las alternativas que la Regla 13, íd., le provee, tampoco puede ser multado si ofreció a sus clientes "un artículo sustituto por el precio del bien anunciado en especial" -Regla 14(A), íd.- o si, en la

alternativa, ofreció el valor en efectivo que equivale al descuento de una unidad del bien anunciado en especial. Regla 14(B), íd. En ese último caso, si el cliente insiste en el artículo específico que se anunció en la venta especial, "el comerciante deberá ofrecerle un vale o 'rain check'". Regla 14(C), íd.

Solo se puede multar al comerciante si no cumplió con ninguna de estas alternativas. En este caso, como DACo no hizo una investigación de campo y el inspector se limitó a leer los anuncios ("shoppers") desde su oficina, el expediente no contiene prueba de que el comerciante fallara en ofrecer a los clientes las alternativas descritas anteriormente. Por lo tanto, no hay evidencia sustancial en el expediente que justifique la multa impuesta.

DACo se embarcó en un análisis de la excepción, sin antes cerciorarse si existía un incumplimiento con la disposición general. Además, aquí DACo prefirió esperar a que TRU publicara no una, sino varias hojas de especiales para entonces notificarle las multas por correo ordinario.

Debido a que en el expediente administrativo no existe evidencia sustancial que demuestre que TRU no tenía una cantidad suficiente de artículos para suplir la demanda, es impertinente entrar a evaluar el contenido de los anuncios en controversia. Por el contrario, si se hubiese realizado una investigación adecuada que demostrara que TRU no tenía una cantidad suficiente de mercancía para suplir la demanda y se negaba a entregar "rain checks", entonces era pertinente

analizar si los anuncios que TRU publicó cumplían con una de las excepciones que permite la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra. Cumplir con el requerimiento de la regla en los anuncios sirve únicamente para eximir a TRU de tener que proveer una cantidad suficiente de artículos por la duración de la venta especial.

La irrazonabilidad de la decisión administrativa también se debe a que DACo no cumplió con su Reglamento para la imposición de multas, supra. La Regla 3 de ese Reglamento, íd., indica que su alcance incluye "delinear las pautas que usarán los empleados y funcionarios del [DACo] en los procedimientos administrativos de imposición de multas y sanciones por infracciones a las leyes y reglamentos bajo [su] jurisdicción". Como se aprecia, ese Reglamento no excluye de su aplicación a ningún procedimiento de imposición de multas. Es decir, aplica a todos. Por su parte, la Regla 4 del Reglamento para la imposición de multas, íd., expresa que su propósito es establecer "parámetros uniformes" en la fijación de multas administrativas.

La Regla 8 del Reglamento de imposición de multas, íd., establece que los inspectores de DACo son los encargados de investigar y emitir avisos de infracción. Esa misma Regla contiene unos requisitos que deben tener los avisos de infracción que DACo emita. En particular, esa Regla indica que todo aviso de infracción contendrá:

> 1. Una descripción de las circunstancias personales del infractor, incluyendo, pero sin limitarse a, nombre de la persona, negocio o institución

intervenida o investigada, dirección física y postal, y los números de teléfonos disponible. En el caso de una corporación, sociedad o entidad jurídica se expresará el nombre y dirección del Presidente, o del agente residente;

2. La descripción de las circunstancias en que se realiza la inspección: lugar, fecha, hora en que se emitió el aviso, nombre de la persona o personas que reciben la infracción y su posición dentro de la estructura organizacional del negocio o institución investigada;

3. La descripción de la actuación u omisión constitutiva de violación;

4. Las disposiciones legales o reglamentarias por las cuales se le notifica el aviso de infracción;

5. Una advertencia a los efectos de que el Departamento podrá, dentro del término de veinte (20) días contados a partir de ser emitido el aviso de infracción, notificar formalmente una multa administrativa y la cantidad máxima de dinero que podría imponérsele; y

6. Las circunstancias del empleado o funcionario que emite el mismo, nombre completo en letra de molde, la Oficina Regional, Unidad o División del Departamento en la cual trabaja y su firma.

Un análisis del expediente refleja que no se cumplió con los siguientes requisitos que exige la Regla 8, íd.: (1) la dirección física de las tiendas investigadas; (2) el nombre y dirección del agente residente de TRU; (3) el lugar y la hora en que se emitieron los boletos; (4) el nombre de la persona que recibió las infracciones y su posición en TRU; (5) una

advertencia de que DACo podía dentro del término de veinte días contados a partir de ser emitidos los avisos de infracción notificar formalmente una multa administrativa y la cantidad máxima que podía imponerse; (6) las circunstancias de los funcionarios que emitieron las multas en cuanto a la unidad de DACo en que trabajaban; (7) las firmas de los representantes de TRU y su nombre en letra de imprenta.

Es claro que los avisos de infracción en este caso no tenían algunos de los requisitos señalados porque los inspectores de DACo <u>no visitaron ninguna de las cuatro tiendas de TRU</u>. Las Reglas 3 y 4 del Reglamento para la imposición de multas, <u>supra</u>, establecen que su alcance es lo suficientemente amplio como para incluir situaciones como esta. Reconocemos que pueden surgir situaciones en las que es innecesario cumplir con la Regla 8 del Reglamento para la imposición de multas, <u>íd</u>. Sin embargo, dada la naturaleza de las violaciones reglamentarias alegadas en este caso, era necesario cumplir con la Regla 8, <u>íd</u>. DACo incumplió con su Reglamento. Eso es contrario a la norma trillada que establece que las agencias administrativas están obligadas a observar estrictamente sus propios reglamentos. <u>Torres v. Junta Ingenieros</u>, 161 DPR 696, 715 (2004); <u>T-Jac, Inc. v. Caguas Centrum Limited</u>, 148 DPR 70, 81 (1999); <u>García Cabán v. U.P.R.</u>, 120 DPR 167, 175 (1987). DACo no tiene facultad para aplicar sus reglamentos solo cuando le plazca.

Así pues, es ineludible concluir que DACo erró al imponer las multas en pugna al amparo de la Regla 13(A)(1) del Reglamento contra prácticas y anuncios engañosos, supra. DACo emitió las multas sin constatar la cantidad de bienes que tenía disponible TRU en las tiendas, ni cerciorarse si, en la alternativa, se ofrecían los "rainchecks" o artículos sustitutos. Solo si no se ofrecía nada de esto estaría TRU en violación del Reglamento. DACo tampoco cumplió con los requisitos que establece su Reglamento de imposición de multas, supra. A pesar de que reconocemos la deferencia que le debe el Poder Judicial a las interpretaciones ofrecidas por las agencias sobre sus propios reglamentos, en este caso, esa interpretación es irrazonable porque no hay evidencia sustancial en el expediente que demuestre que TRU no tenía cantidades disponibles de los artículos objeto de las 93 multas que nos ocupan. OCS v. Universal, supra; The Sembler Co. v. Mun. de Carolina, supra; Torres Santiago v. Depto. Justicia, supra; Vélez v. A.R.Pe., supra; O.E.G. v. Rodríguez, supra. Ausente esa prueba, no puede decirse que TRU incumplió con lo que el reglamento le requiere.

IV

Por los fundamentos antes expuestos, revocamos la determinación irrazonable de DACo ante la ausencia de evidencia sustancial que la justifique. Se dejan sin efecto todas las multas que DAco impuso a TRU.

Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Oronoz

Rodríguez concurre con el resultado sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente al cual se unió la Jueza Presidenta señora Fiol Matta.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Departamento de Asuntos del Consumidor<br><br>Recurrido<br><br>v.<br><br>TRU of Puerto Rico, Inc. H/N/C Toys "R" Us<br><br>Peticionario | CC-2011-0758 |

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez al que se une la Jueza Presidenta señora Fiol Matta

San Juan, Puerto Rico, a 9 de octubre de 2014

Disiento respetuosamente del curso seguido por una mayoría de este Tribunal por entender que la Sentencia que hoy se emite, lejos de adelantar los intereses de los consumidores puertorriqueños, desvirtúa el propósito de los reglamentos pertinentes aprobados por el Departamento de Asuntos del Consumidor (DACo). En vez, confirmaría la sentencia del Tribunal de Apelaciones que validó las multas impuestas a Toys "R" Us de Puerto Rico (TRU) por incumplir con el Reglamento Contra Prácticas y Anuncios Engañosos, Reg. Núm. 7751 de 24 de septiembre de 2009.

Pasemos entonces a resumir los hechos que sirven de trasfondo a la controversia ante nuestra consideración.

I

El 24 de octubre de 2009 entró en vigor el *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751,

*supra*, promulgado por el DACo en virtud de los poderes conferidos en su Ley Orgánica. Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341. Este Reglamento tiene el "propósito de proteger a los consumidores de las prácticas y anuncios que creen o tiendan a crear una apariencia falsa o engañosa sobre bienes o servicios ofrecidos en el comercio". Reg. Núm. 7751, *supra*, Regla 2.

En anticipación a la fecha de efectividad de este reglamento, el peticionario, TRU, y otros comerciantes solicitaron una reunión con el Secretario del DACo para discutir varias dudas antes de la temporada navideña de 2009. Apéndice del Certiorari, en la pág. 21. La reunión se celebró el 21 de octubre de 2009. Entre otros asuntos, en la reunión TRU expresó inquietud ante las nuevas disposiciones aplicables a ventas especiales plasmadas en las Reglas 13, 14 y 15 del *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*, pues TRU posee cuatro tiendas en Puerto Rico — cada una con un inventario único — pero sólo publica un anuncio de venta especial que aplica a las cuatro tiendas. Debido a que el número de artículos disponibles que TRU anuncia varía de tienda en tienda, le solicitó al Secretario una recomendación sobre cómo divulgar el inventario disponible para cumplir con las exigencias del Reglamento. Según el testimonio presentado por las partes y las determinaciones de hechos emitidas por el Juez Administrativo en la vista administrativa ante el

DACo, la recomendación del Secretario fue "que estableciera 'la cantidad más baja de la tienda que tuviera'". *Id.*

Luego de celebrada la reunión, el 3 de noviembre de 2009, el DACo emitió la Interpretación del Secretario 2009-02, donde profundizó sobre las disposiciones del *Reglamento Contra Prácticas y Anuncios Engañosos*. En particular, el Secretario interpretó las Reglas 5, 13, 14, 15, 11(I), 22(J), 23 y 28 del Reglamento en cuestión. Respecto a la Regla 13, en síntesis, estableció que "los anuncios de los artículos anunciados en especial **indicarán el número de artículos disponibles por tienda o en el almacén** y que la venta especial finalizará cuando se vendan los artículos disponibles". Interpretación del Secretario 2009-02, *supra*, en la pág. 4.

Así las cosas, y a raíz de una investigación realizada el 18 de noviembre de 2009 por un funcionario del DACo, el Departamento encontró que cuarenta y ocho (48) anuncios publicados por TRU en una hoja de venta especial violaron la Regla 13(A)1 del *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*.[2] En su "shopper", TRU había identificado la cantidad disponible de artículos en venta especial utilizando la frase "mínimo uno (1) por tienda". El DACo determinó que esta frase no cumplía con el requisito de la Regla 13(A)1 de indicar clara y adecuadamente la cantidad total disponible de los artículos en venta especial. Posteriormente, el DACo encontró

---

[2] La fecha de vigencia de la venta especial fue del 15 al 21 de noviembre.

veinticuatro (24) y veintiún (21) infracciones adicionales en anuncios de venta especial publicados durante los meses de noviembre y diciembre de 2009, para un total de noventa y tres (93) infracciones a la Regla 13(A)1 del *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*, Regla 13(A)1. [3] El 10 de diciembre de 2009, notificó una multa de $400 por cada una de las noventa y tres (93) infracciones.

TRU solicitó la revisión de las multas notificadas y el 5 de mayo de 2010 se celebró una vista administrativa. En la vista testificó la empleada de TRU responsable de coordinar con los diseñadores de los "shoppers". Según su testimonio, la señora indicó que originalmente los anuncios a pautar contenían la cantidad disponible de artículos por tienda y ninguno incluía la palabra "mínimo". No obstante, luego de la reunión con el Secretario, la representación legal de TRU le indicó que debían utilizar la palabra "mínimo".

Por su parte, TRU solicitó la desestimación de las multas impuestas, alegando que no incumplió con la Regla 13(A)1 del *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*. Además, adujo que el DACo estaba impedido de ir en contra de sus propios actos, pues en la reunión celebrada entre las partes el Secretario le expresó a los representantes de TRU que indicaran la cantidad disponible según la tienda que menos inventario

---

[3] Las fechas de vigencia de los anuncios de venta especial fueron del 6 al 12 de diciembre y del 13 al 19 de diciembre.

tuviera. A su vez, alegó que, al notificar las infracciones y multas, el DACo no cumplió con el *Reglamento Para la Imposición de Multas*, pues no emitió Aviso de Infracción alguno antes de notificar las multas. Reg. Núm. 7750, *supra*.

Mediante Resolución dictada el 5 de enero de 2011, el DACo ordenó TRU a pagar la cantidad total de $37,600, esto es, una multa de $400 por cada una de las noventa y tres (93) infracciones. Posteriormente, TRU solicitó la revisión judicial de la determinación del DACo ante el Tribunal de Apelaciones, quien confirmó la resolución mediante sentencia archivada en autos el 16 de agosto de 2011.

Inconformes con la determinación del Tribunal de Apelaciones, TRU acudió ante este Tribunal y planteó los siguientes errores. Primero, erró el Tribunal de Apelaciones al confirmar la resolución del DACo que resolvió que TRU infringió la Regla 13(A)1 del *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*. Segundo, erró el foro apelativo intermedio al no desestimar las multas impuestas porque el DACo no emitió los Avisos de Infracción que exige la Regla 8 del *Reglamento para la Imposición de Multas*, Reg. Núm. 7750, *supra*. Tercero, el DACo abusó de su discreción al imponer varias multas por una sola violación al *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*. Finalmente, el DACo está impedido de ir en contra de sus propios actos, debido a la alegada incompatibilidad entre

las expresiones del Secretario en la reunión con TRU del 21 de octubre de 2009 y la Interpretación del Secretario Núm. 2009-02, *supra*.

Planteada así la controversia, el 16 de diciembre de 2011 expedimos el auto solicitado. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

La revisión judicial de las decisiones administrativas busca delimitar la discreción de las agencias para cerciorarse que éstas ejerzan sus funciones conforme a la ley y de forma razonable. *Mun. De San Juan v. J.C.A.*, 149 D.P.R. 263, 279 (1999). Considerando la vasta experiencia y el conocimiento especializado que poseen las agencias gubernamentales sobre los asuntos que se le han delegado mediante legislación, como norma general, las decisiones que toman los organismos administrativos gozan de gran deferencia y respeto de parte de nuestros tribunales. *Mun. San Juan v. Plaza Las Américas*, 169 D.P.R. 310 (2006); *Hernández v. Centro Unido*, 168 D.P.R. 592 (2006).

No obstante, esta deferencia no puede servir de pretexto para imprimirle un sello de corrección a decisiones o interpretaciones administrativas irrazonables o contrarias a derecho. Por lo tanto, la deferencia reconocida cede en instancias apropiadas y meritorias, a saber: (1) cuando la determinación administrativa no está basada en evidencia sustancial; (2) cuando la agencia erró

al aplicar o interpretar las leyes o reglamentos que administra; (3) cuando la agencia realiza determinaciones carentes de base racional, por lo que actúa de forma arbitraria, irrazonable o ilegal; o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Empresas Ferrer v. ARPe*, 172 D.P.R. 254, 264 (2007).

Las determinaciones de hecho de los organismos administrativos gozan de una presunción de regularidad y corrección que los tribunales deben respetar y le corresponde a la parte que las impugne producir evidencia suficiente como para derrotar esta presunción. *Otero v. Toyota*, 163 D.P.R. 716 (2005). Según establece la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), los tribunales sostendrán las determinaciones de hechos que realicen las agencias administrativas si, al considerar el expediente administrativo en su totalidad, sus determinaciones están basadas en evidencia sustancial. Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, sec. 4.5, 3 L.P.R.A sec. 2175; *Empresas Ferrer*, 172 D.P.R. en la pág. 265. A su vez, **evidencia sustancial** es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Hernández v. Centro Unido*, 168 D.P.R. en la pág. 615.

Por otro lado, la facultad de los tribunales para revisar conclusiones de derecho es mayor, aunque no absoluta:

> En cuanto a las conclusiones de derecho, la L.P.A.U. dispone que éstas pueden revisarse 'en todos sus aspectos por el tribunal'. 3 L.P.R.A. sec. 2175. No obstante, los tribunales deben conceder gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y los reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de éstas por el propio. . . . Así, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. . . . Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa.

*Empresas Ferrer*, 172 D.P.R. en la pág. 266 (Citas omitidas).

Por lo tanto, el estándar que utilizará un tribunal para revisar las decisiones de la agencia depende del aspecto de la decisión que se revisa: si es una determinación de hechos o una conclusión de derecho.

A

El DACo fue creado con el propósito principal de vindicar e implementar los derechos del consumidor. 3 L.P.R.A. sec. 341b. Para cumplir con esta encomienda, y en virtud de la facultad del Secretario del DACo para "[r]eglamentar y fiscalizar los anuncios y las prácticas engañosas en el comercio", 3 L.P.R.A. sec. 341e(j), el 24 de septiembre de 2009 se aprobó el *Reglamento Contra*

*Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*. El mismo entró en vigor el 24 de octubre de 2009.[4]

Cónsono con la misión del DACo, el *Reglamento Contra Prácticas y Anuncios Engañosos* debe interpretarse liberalmente a favor del consumidor. Reg. Núm. 7751, *supra*, Regla 4. Este Reglamento aspira a que el consumidor cuente con toda la información necesaria y adecuada para poder tomar una decisión informada sobre el bien o servicio anunciado. Consecuentemente, define un anuncio engañoso como:

> [C]ualquier anuncio que constituya o tienda a constituir fraude, engaño o comunique o tienda a comunicar una idea falsa o incorrecta sobre el bien o servicio anunciado. Cualquier anuncio que omite datos relevantes del producto, bien o servicio, limitando al consumidor de tomar decisiones informadas e inteligentes.

*Id*. Regla 5(c).

Más aún, la Regla 8 del *Reglamento Contra Prácticas y Anuncios Engañosos* dispone lo siguiente sobre la forma que deben tener los anuncios:

> Todo anuncio deberá estar redactado, expresado y presentado en tal forma que lleve a la mente del consumidor toda aquella información que le sea esencial y necesaria para conocer sobre las cualidades, calidad, formas de pago, precio, tamaño, **cantidad**, utilización o cualquier otra característica del bien o servicio que se anuncia, libre de toda ambigüedad que puede tender a confundirlo.

*Id*. Regla 8(A).

---

[4] El Reglamento Núm. 7751 derogó los reglamentos 7402 y 7581. A su vez, el Reglamento Núm. 7751 fue derogado por el *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7932 de 15 de octubre de 2010.

En las Reglas 13, 14 y 15 del *Reglamento Contra Prácticas y Anuncios Engañosos* el DACo estableció un esquema para regular los anuncios de ventas especiales, conocidos como "shoppers". Según establece el Reglamento, todo comerciante que desee anunciar una venta especial debe tener, bien sea en la misma tienda o el almacén, "cantidades suficientes [del bien] para responder a la demanda razonablemente anticipada durante todo el periodo de efectividad de la venta especial anunciada". *Id*. Regla 13 (A). Si el bien anunciado se agota antes que culmine la venta, la Regla 14 le provee dos (2) alternativas al comerciante, entre las cuales el consumidor puede elegir. Primero, el comerciante vendrá obligado a ofrecerle al consumidor un artículo sustituto por el precio del bien anunciado. Segundo, si el consumidor prefiere comprar el bien anunciado en venta especial, el comerciante deberá ofrecerle un vale o "rain check" para que vuelva a la tienda dentro de un periodo de 30 días y compre el bien según los términos anunciados. Si luego de ofrecer el vale el comerciante no ha cumplido con lo prometido, entonces el comerciante vendrá obligado a pagar en efectivo el valor representativo del descuento.

Ahora bien, si tras no tener disponible el bien anunciado en venta especial el comerciante desea eximirse de las responsabilidades que impone la Regla 14 — ofrecer artículos sustitutos, ofrecer un vale para el bien anunciado en especial o compensar el valor representativo

del descuento, según proceda —, deberá cumplir con ciertos requisitos establecidos en la Regla 13(A):

> El comerciante tendrá disponible para la venta, en la tienda o en el almacén, los bienes anunciados en especial, en cantidades suficientes para responder a la demanda razonablemente anticipada durante todo el período de efectividad de la venta especial anunciada, **a menos que se cumpla con los siguientes requisitos:**
> 1. El anuncio del bien en especial indica clara y adecuadamente la cantidad disponible de cada uno de los bienes en especial por tienda;
> 2. que la venta especial finalizará en una fecha determinada; y
> 3. hasta que se vendan los artículos disponibles

*Id.* (Énfasis suplido).

Según se desprende del texto de la Regla 8, el anuncio debe indicar **clara y adecuadamente** la cantidad disponible de cada uno de los bienes disponibles en **cada tienda que anuncie**. También debe indicar clara y adecuadamente que la venta termina en una fecha determinada y que durará hasta que se vendan los artículos disponibles. Para activar la exención que provee la Regla 13, el anuncio de venta especial **siempre** tiene que cumplir con sus tres (3) requisitos.

En síntesis, al agotarse un bien anunciado en venta especial, como norma general, el comerciante está obligado a proveer los tres (3) remedios disponibles en la Regla 14. Sin embargo, el comerciante puede librarse de esa responsabilidad cumpliendo con las exigencias de la Regla 13.

Para efectos de la Regla 13, el Reglamento define *clara y adecuadamente* como una "representación fácilmente

perceptible, libre de ambigüedades y de un tamaño, contrastes de color y audición que al ser presentada pueda ser rápidamente captada y entendida sin dificultad." *Id.* Regla 5(F). Como reconocimos en *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881, 890 (1999), el término *adecuada* es inherentemente ambiguo. Evaluando si una *corrección* era adecuada y razonable, expresamos que esa determinación requiere un análisis caso a caso, cónsono con el propósito de la exigencia misma. *Id.* Consiguientemente, al interpretar el requisito de la Regla 13 de identificar clara y adecuadamente las cantidades disponibles, debemos sopesar el propósito de la Regla y la totalidad del *Reglamento Contra Prácticas y Anuncios Engañosos*, Reg. Núm. 7751, *supra*.

Para que un anuncio cumpla con el requisito de indicar clara y adecuadamente la cantidad de bienes disponible éste debe, según la totalidad de su contenido, indicar la cantidad disponible de forma tal que el consumidor que se enfrente al anuncio pueda determinar esa cantidad y tomar una decisión informada sobre la oferta. Además, para que la cantidad anunciada refleje clara y adecuadamente la cantidad verdaderamente disponible de los bienes anunciados, la cantidad indicada debe guardar una relación racional con los dos requisitos adicionales de la Regla 13 — anunciar la fecha en que termina la venta y que la misma será efectiva hasta que se agoten las cantidades — de forma tal que se justifique eximir al comerciante de

conceder un vale, descuento o artículo sustituto, según requerido por la Regla 14.

B

Es norma reiterada que "[u]na vez una Agencia ha promulgado unos reglamentos para facilitar su proceso decisional y limitar el alcance de su discreción viene obligada a observarlos estrictamente y no queda[n] a su soberana voluntad los derechos que ella misma ha extendido". *García Cabán v. U.P.R.*, 120 D.P.R. 167, 174 (1987). Cónsono con su mandato de velar por el cumplimiento de las leyes y reglamentos que administra, el DACo también promulgó el *Reglamento de Multas y Avisos de Infracción*, Reg. Núm. 7750, *supra*. El Reglamento define *Aviso de Infracción* como "una notificación expedida por el Departamento en la que se imputa la comisión de unos hechos que constituyen una violación de alguna ley o reglamento u orden administrada por el Departamento". *Id.* Regla 5(A). Por su parte, la Regla 8(B) indica que el Aviso de Infracción debe contener: (1) una descripción de las circunstancias personales del infractor; (2) la descripción de las circunstancias en que se realiza la **inspección**; (3) la descripción de la actuación u omisión constitutiva de violación; (4) las disposiciones legales o reglamentarias que dan lugar al aviso de infracción; (5) una advertencia que el Departamento podrá notificar una multa dentro de los próximos 20 días; y (6) las

circunstancias del empleado o funcionario que emite el mismo. *Id.* Regla 8.

El Aviso de Infracción se expide cuando se realiza una inspección, mas no siempre que se realice una investigación; ambos términos no son sinónimos. La Regla 7 del Reglamento claramente distingue entre ambos conceptos al indicar que "[l]a investigación que realiza el Departamento, incluye, pero no se limita a, **inspecciones de campo**, requerimientos de información. . . **estudios y revisión** de información, documentos, anuncios o pautas en cualquier medio de comunicación". *Id.* Regla 7. Por lo tanto, a pesar de que la revisión de los anuncios pautados para una venta especial constituye un tipo de investigación, no constituye una inspección de campo que active el requisito de emitir un Aviso de Infracción. Más bien, el Aviso de Infracción debe emitirse cuando, por la naturaleza misma de una inspección que requiera visitar el establecimiento del comerciante, pueda verse afectado el derecho de la parte infractora a preparar una defensa adecuada, según exige el debido proceso de ley. Por ejemplo, la Regla 8(B) exige que el Aviso de Infracción incluya una "descripción de las circunstancias en que se realiza la inspección: lugar, fecha, hora en que se emitió el aviso, nombre de la persona o personas que reciben la infracción y su posición dentro de la estructura organizacional del negocio o institución investigada". *Id.* Regla 8(B)(2). Este tipo de información sería redundante

para defenderse de una multa impuesta por infracciones al esquema aplicable a anuncios de venta especial, pues la infracción surge de anuncios impresos en miles de periódicos y no requiere una visita al establecimiento del comerciante para ser investigada.

Otras disposiciones del *Reglamento Para la Imposición de Multas* abonan a interpretar que los Avisos de Infracción sólo aplican a investigaciones realizadas mediante inspecciones de campo en los establecimientos del infractor. La Regla 9 dispone que el DACo debe notificar una multa administrativa "dentro del término de veinte (20) días contados a partir de la fecha en que se emitió el aviso de infracción. *Id.* Regla 9. Este término tan corto sólo se justifica si consideramos que las infracciones que surjan producto de una inspección, por la propia naturaleza de la infracción, requieren que el infractor mismo preserve la prueba que utilizará para defenderse adecuadamente.

De igual forma, el *Reglamento Para la Imposición de Multas* autoriza al DACo a expedir Avisos de Orientación para informar a los comerciantes sobre prácticas o actuaciones que pueden constituir infracciones a las leyes y reglamentos que administra. *Id.* Regla 5(B). Un Aviso de Orientación tiene el propósito de informarle a la parte infractora "que si incurre nuevamente en una infracción [al ordenamiento del DACo] o si no corrige la deficiencia señalada en el periodo de tiempo especificado en el aviso de orientación, podrá ser sancionado con una multa

administrativa". *Id.* Regla 8(A)(7). Evidentemente, el Reglamento contempla la potestad del DACo de imponer multas a raíz de un Aviso de Orientación sin que medie un Aviso de Infracción alguno.

Además, la Regla 10(A) indica las cuantías aplicables a las multas producto de un Aviso de Infracción expedidos durante inspecciones realizadas por los oficiales del DACo. A tales efectos, indica la cuantía de las multas que se emitan en virtud de "[a]visos de Infracción expedidos por violación a disposiciones independientes de las Leyes y Reglamentos bajo la jurisdicción del Departamento, durante una **visita rutinaria**". *Id.* Regla 10(A) (Énfasis suplido).

Las Reglas 8 y 10 no implican que los Avisos de Infracción son la única forma de iniciar un proceso adjudicativo para imponer una multa, pues la propia Ley Orgánica del DACo, el *Reglamento Contra Prácticas y Anuncios Engañosos*, el *Reglamento Para la Imposición de Multas* y la L.P.A.U. permiten que sea el mismo DACo quien presente una querella o inicie una investigación por violaciones a las leyes y reglamentos que administra. El artículo 6(J) de la Ley Orgánica del DACo, 3 L.P.R.A. sec. 341, lo autoriza a fiscalizar los anuncios y las prácticas engañosas en el comercio. Conforme a la sección 3.4 de la L.P.A.U., 3 L.P.R.A. sec. 2154, el DACo tiene facultad para iniciar una querella por infracción a sus reglamentos, *motu proprio*, sin que algún consumidor presente una querella o queja. La Regla 6 del *Reglamento Para la Imposición de*

*Multas* permite que "[e]l Departamento a iniciativa propia o como producto de una queja o querella, inici[e] la investigación de todas aquellas situaciones bajo su jurisdicción". Reg. Núm. 7750, *supra*, Regla 6. Finalmente, la Regla 31 del *Reglamento Contra Prácticas Engañosas* establece que "[e]l Secretario queda facultado para expedir avisos, órdenes de hacer o no hacer, cesar y desistir, e imponer sanciones y multas administrativas por lo máximo permitido en la Ley Orgánica del Departamento de Asuntos del Consumidor por infracción, por cualquier incumplimiento de las disposiciones de este Reglamento, o de las órdenes y resoluciones emitidas bajo el mismo". Reg. Núm. 7751, *supra*, Regla 31.

Al incluir el mecanismo de Aviso de Infracción en su reglamento, el DACo ha decidido ir más allá de los requisitos estatutarios de la L.P.A.U. y su Ley Orgánica y conceder unas garantías adicionales de forma tal que la parte infractora esté en posición de defenderse adecuadamente de las infracciones investigadas mediante inspección. De ninguna forma puede entenderse que las Reglas 8 y 10 del *Reglamento Para la Imposición de Multas* limitan cómo el DACo puede iniciar un proceso de imposición de multas. Las reglas aplicables a los Avisos de Infracción buscan preservar el derecho del infractor a preparar una defensa adecuada en la circunstancia específica de una infracción que requiera una inspección para ser investigada.

III

Discutida la normativa aplicable, pasemos a evaluar la controversia ante nuestra consideración.

TRU alegó que indicar en sus anuncios de venta especial que la cantidad disponible de los bienes era de un mínimo de uno por tienda no infringe la Regla 13(A) del *Reglamento Contra Prácticas y Anuncios Engañosos*. Reg. Núm. 7751, *supra*. No le asiste la razón. El Reglamento indica clara y adecuadamente los requisitos aplicables a los anuncios de venta especial. Para eximirse de la responsabilidad de ofrecer artículos sustitutos, vales o una compensación en efectivo cuando el bien anunciado no esté disponible, el anuncio de venta especial debe indicar clara y adecuadamente la cantidad de los bienes que el comerciante tendrá disponible. Contrario a lo que concluye hoy una mayoría de este Tribunal, la obligación de TRU no sólo era tener cierta cantidad de mercancía disponible, sino anunciar su venta especial de forma clara y adecuada para los propósitos mismos del Reglamento.

Al expresar que la cantidad de los bienes anunciados será de "mínimo uno por tienda", TRU intentó aprovecharse de los beneficios que otorga la exención de la Regla 13 sin cumplir con sus requisitos, tal y como concluyó el DACo. Hoy una mayoría de este Tribunal avala ese tortuoso proceder. De ninguna forma puede entenderse que utilizar la frase "mínimo uno por tienda" cumple con el requisito de establecer clara y adecuadamente la cantidad disponible del

bien anunciado. Durante la vista administrativa, el propio TRU reconoció que la cantidad declarada en sus anuncios no reflejó la cantidad real de los bienes que tenían disponible:

> P: ¿Y entonces, qué decidieron en ese espacio de 'disponible' o 'mínimo tanto por tienda'?
> R: En ese caso lo que. . .o sea, se tomó la determinación de decir: 'Pues, mira, vamos a poner 'mínimo uno por tienda'. **Se puso el uno por tienda porque se sobreentendía que al poner mínimo era lo menos que iba a haber. A lo mejor en una tienda iba a haber quince pero, por lo menos, iba a haber uno;** por la cuestión del factor tiempo, o sea, que no podíamos, no teníamos tiempo suficiente para rehacer toda esa matemática que conlleva para dar una. . .cuántos artículos van a haber en ese 'shopper'.

Transcripción de la Vista Administrativa, en la pág. 39 (Énfasis suplido).

Además, TRU contaba con la Interpretación del Secretario del DACo 2009-02, la cual abundaba ampliamente sobre los pormenores aplicables al esquema para anuncios de ventas especiales.

No podemos perder de vista que el *Reglamento Contra Prácticas y Anuncios Engañosos* busca que los consumidores cuenten con la información necesaria y correcta al momento de tomar decisiones. Contrario a lo alegado por TRU — y tal como sostiene hoy una mayoría de este Tribunal —, las infracciones que dieron lugar a las multas no ocurrieron por meramente utilizar la frase "mínimo", sino por no indicar clara y adecuadamente la cantidad de bienes anunciados en venta especial. Meramente indicar que habrá un mínimo de un artículo por tienda podrá ser cierto, pero es impreciso y burla el propósito del *Reglamento Contra*

*Prácticas y Anuncios Engañosos*: colocar al consumidor en posición de tomar una decisión informada sobre los bienes y servicios anunciados. El hecho que ningún cliente haya presentado una querella ante el DACo no constituye impedimento alguno para que el DACo fiscalice sus reglamentos y las leyes que administra. Por todo lo anterior, confirmaríamos la determinación del foro apelativo intermedio que sostuvo que TRU incumplió las exigencias de la Regla 13(A) del *Reglamento Contra Prácticas y Anuncios Engañosos*. Reg. Núm. 7751, *supra*, Regla 13(A).

Por su parte, TRU sostiene que el DACo incumplió su obligación de expedir Avisos de Infracción según requiere la Regla 8(B) del *Reglamento Para la Imposición de Multas*. Tampoco le asiste la razón. La Regla 8(A) indica que cuando se realiza una **inspección de campo mediante visita física** el DACo está obligado a emitir un Aviso de Infracción. En este caso las multas notificadas fueron producto de una investigación realizada por un funcionario del DACo en sus propias oficinas. Su reglamento sencillamente no exige — y la lógica impide — investigar este tipo de infracción mediante una inspección de campo.

La propia mayoría reconoce que "pueden surgir situaciones en las que es innecesario cumplir con la Regla 8 del Reglamento para la imposición de multas". Sentencia del Tribunal, en la pág. 15 (citas omitidas). No obstante, la mayoría entiende que la naturaleza de las infracciones

imputadas a TRU requiere que el DACo realice una inspección física, por lo que en este caso no se cumple con la posible excepción. Al así proceder, la mayoría ignora el propósito principal del Reglamento Contra la Práctica de Anuncios Engañosos: proteger al consumidor ante los anuncios imprecisos y engañosos. Contrario a lo resuelto por este Tribunal — y según hemos reseñado en este voto – el daño que intenta evitar Reglamento ocurre con la publicación misma del anuncio y resulta ilógico requerir inspección de campo para verificar un anuncio de venta especial publicado en un periódico.

Recibir un Aviso de Infracción tampoco sería útil para que TRU prepare una defensa adecuada, pues la naturaleza de la infracción no requiere que TRU tome medida alguna para evaluar la investigación que realizó el DACo o preservar evidencia. De hecho, TRU sólo alega que procede revocar las multas porque el DACo incumplió con su propio Reglamento, sin expresar de forma alguna cómo dicho incumplimiento le afectó su derecho a preparar una defensa adecuada.

Adicionalmente, TRU sostiene que la Regla 10 del *Reglamento Para la Imposición de Multas* limita el número de Avisos de Infracción que puede emitir el DACo luego de una visita, por lo que el DACo abusó de su discreción al emitir varias multas por una sola violación a la Regla 13(A)1. El DACo concluyó que emitió noventa y tres (93) querellas contra TRU y no Avisos de Infracción, como arguye TRU. Anteriormente explicamos las razones por las cuales procede

descartar la aplicación de la Regla 8 del Reglamento de Multas a esta controversia. Debido a que el DACo no está obligado a realizar inspección de campo alguna ni emitir un Aviso de Infracción, la Regla 10(A) tampoco es de aplicación a las multas que impugna TRU, por lo que no se cometió el error señalado.

El propósito de la Regla 10 es limitar la cuantía de las multas impuestas cuando surjan "durante una visita rutinaria" de sus investigadores. Reg. Núm. 7750, *supra*, Regla 10. De ninguna forma implica que sólo se puede emitir una multa por varias violaciones a la misma disposición. El propio *Reglamento Contra Prácticas y Anuncios Engañosos* permite imponer multas por cada anuncio que viole sus disposiciones, y cada bien o servicio anunciado constituye un anuncio independiente:

> Anuncio — cualquier manifestación oral, escrita, gráfica, pictórica, electrónica o de cualquier forma presentada, hecha con el propósito de ofrecer, describir o de cualquier otra forma representar **un bien o servicio o algún aspecto de un bien o servicio.**

Reg. Núm. 7751, *supra*, Regla 5(B) (Énfasis suplido).

El "shopper" que publicó TRU no es un solo anuncio, pues según el *Reglamento Contra Prácticas y Anuncios Engañosos* cada anuncio de un bien anunciado es un anuncio independiente que debe cumplir a cabalidad con las exigencias del esquema para ventas especiales.

Asimismo, la conclusión del DACo de que emitió noventa y tres (93) querellas contra TRU es una determinación de hecho, por lo que goza de una presunción de regularidad y

corrección, y le corresponde a TRU producir evidencia suficiente para derrotarla. *Otero,* 163 D.P.R. en la pág. 716. TRU no ha presentado esta evidencia. Tampoco encontramos que el DACo haya errado al interpretar sus reglamentos o que sus determinaciones carezcan de evidencia sustancial que las apoye. Por lo tanto, el DACo no abusó de su discreción al imponer multas individuales por las noventa y tres (93) violaciones independientes que cometió TRU.

IV

Conforme a lo anterior, indicar que como mínimo habrá uno de los bienes anunciados en venta especial no satisface los requisitos de la Regla 13 del *Reglamento Contra Prácticas y Anuncios Engañosos*. Asimismo, el requisito de la Regla 8 del *Reglamento Para la Imposición de Multas* de emitir un Aviso de Infracción antes de notificar una multa sólo es de aplicación cuando la infracción y multa proceden de una inspección realizada por el DACo. El *Reglamento Para la Imposición de Multas* tampoco es óbice para que el DACo imponga una multa por cada anuncio deficiente incluido en un "shopper", pues cada bien anunciado constituye un anuncio independiente que debe cumplir con las exigencias del *Reglamento Contra Prácticas y Anuncios Engañosos*.

Por todo lo anterior, disiento de la Sentencia emitida por este Tribunal. En vez, confirmaría la sentencia del Tribunal de Apelaciones que sostuvo la imposición de noventa y tres (93) multas por parte del DACo.


                                   Anabelle Rodríguez Rodríguez
                                        Juez Asociada